Is counsel present for the next case? Please come forward. Okay, this is number 17-14-56, Auto-Kaps, LLC against the Clorox Company. Okay, this is your name. I represent the appellant, Auto-Kaps, in this case. And we believe that the claim construction and decisions on summary judgment below should be reversed because the district court committed error on three different grounds. One, they incorrectly construed the claim terms at issue. Two, they disregarded evidence before the court without explaining why they disregarded the evidence. And for the evidence they did consider, they provided no analysis that provides a basis for understanding how it reaches decisions. And then third, they failed after realizing, as shown at appendix page 9, that the parties disagreed, quote, as to the plain, ordinary meaning, close quote, of these three claim terms to conduct a formal markman hearing. So our position at that point is the court should have stopped and should have instituted formal markman hearings. How can outer surface be the same as inner surface? Well, outer surface is not the same as the inner surface. However, there is a boundary between the two. But to address the point I think you're getting to, the court disregarded something that Clorox actually admitted on this first claim limitation mounted on the inner surface. Specifically, the court, district court, completely ignored that at page 23 of its responsive brief. Clorox says one can, quote, imagine a design where the dip tooth goes into the bottle at these points and then expands out to create a flange mounted to the inner surface of the sidewall, close quote. That's exactly what the accused Clorox device does. If you look at page 9, 10 of Clorox. It doesn't go inside all the way down. Excuse me? It doesn't extend on the inside all the way down, right? The claim does not require that it be mounted along the entire interior. It's like if you mount a picture on a wall, it's mounted at one point where it's nailed. The claim only requires that it be mounted on the interior. So if you'll permit me, I'll show you this. It's a flange here. It's essentially mounted on the interior. This is exactly what Clorox is talking about. That's all the claim requires, that it be mounted on the interior. What about extending from the open top rather than two inches below? Again, that's another thing we believe the court erred on. So with regard to the open top, if you look at appendix page 13, the court incorrectly construed, quote, top of, close quote, rather than, quote, extending from the open top, close quote. And the court provides no analysis or explanation for its conclusion at appendix page 14 that this limitation means, quote, the passageway extends all the way from the highest point of the mount of the bottle, close quote, and is not met if it, quote, begins two inches below the open top, close quote. The court does not cite any intrinsic evidence, does not cite any dictionary definitions to support its conclusion, its construction or its conclusion that the limitation is not met under the doctrine of equivalence. The court also ignored Mr. Foster's expert testimony at appendix page 277 regarding the meaning of this term. And for that reason, we believe a genuine issue of material fact regarding the meaning of this disputed term exists that precludes advance of summary judgment. The third claim limitation was, quote, only if the passageway, and it ends, and this is what we believe is operative, is engaged in a fluid connection. So the term requires the establishment of a fluid connection between the different passageways, the cap passageway and the container passageway. The fact that the cap of the Clorox bottle can be mounted to the container of the Clorox bottle in a non-aligned, non-fluid connection does not change this determination. The patent itself talks repeatedly and in critical places about the fact that the purpose is to establish a fluid connection to be able to pump fluid from the reservoir of the container for dispersal of the pump cap. In connection with this issue, Clorox cites the Ho reference. And the Ho reference does not cite, does not change, excuse me, this foregoing conclusion. As Ho pertains to an axial limitation that is shown as appendix page 179, auto caps overcame during prosecution by amending claim one to recite that, quote, the pump passageway is non-axial relative to the pump mechanism, close quote. That means they are not in the same, do not align on the same axis. In an earlier amendment, it is true, as Clorox notes at page 30 of its response brief, that to overcome Ho, auto caps argued that, quote, where does Ho teach, close quote, that the cap can be detachably coupled to the neck of the container only if the cap passageway and container passageway are aligned. However, this argument was unsuccessful as the rejection of patentability of claim one was subsequently maintained in the next office action issued by the PTO. And that's shown at appendix page 169. And likewise, for this third claim limitation, as the others, the court does not cite any intrinsic evidence or dictionary definitions to support its construction of the term. The court also ignored Mr. Foster's expert testimony at appendix page 277 regarding the meaning of this term. And again, for that reason, I believe a genuine issue of material fact regarding the meaning of this disputed term exists and precludes summary judgment. As far as the court's failure to consider certain evidence and not conduct a formal markman, I think it's critical here. Once the court realized that the parties disputed what the ordinary and customary meaning of these terms that the parties initially believed there was no dispute about, the court should have held a markman proceeding whereby we could have conducted some claim construction, discovery, prepared a joint claim chart, and submitted formal briefs. The failure to do so renders markman meaningless. Markman is so important. These are pretty simple terms in this patent. Well, that's what we thought, but apparently there's a big factual dispute between the parties. And consequently, we believe that had markman occurred, if the district court had followed the markman process, we believe it likely would have been better formed and would have ruled in all caps favor. Also, the district court, in addition to ignoring, for example, if you look at its decision, appendix pages 1 to 21, they don't even discuss dictionary definitions, so they totally ignore that. And as far as the expert testimony, they reference it in footnote 2, which is appendix page 10. All they acknowledge is that there was expert testimony, but they don't provide any analysis or explain why they disregarded it. And as in Microsoft Corp versus Parallel Networks and Googling versus Intellectual Ventures, it's important that the court explain why they either did consider arguments or if they did not consider the rationale for not doing so. I would also point out that the court didn't address certain arguments we made. We at Helen AutoCats made an argument regarding the shrink wrap as an alternative construction, and the court did not address that either. If the panel has any questions, I'm happy to answer them. All right, thank you. We'll save the rest of your time for rebuttal. All right, Mr. Isbester. Thank you, Your Honor. May it please the court, James Isbester on behalf of the Pelley and the Cross Appellant, the Clorox Company. With me at council table is Jillian Thackery, chief IP counsel for Clorox. As a must, appellant here disputes all three grounds upon which the district court granted summary judgment of non-infringement. I'd like to begin with the third ground, the coupling limitation, in my remarks. And I do so because the coupling limitation presents no disputed questions of fact. The court, I believe, has an exemplar of the bottle, and it is indisputable that the cap can mount the bottle forward. Actually, that's the backward position, Your Honors. Or in the forward position. And only in the forward position does the bottle actually satisfy the claim limitations. There is no dispute about that. In addition, there is no dispute about the doctrine of equivalence with respect to the coupling limitation. What we're left with is the simple question of law. What is the right construction of that term, and in particular, the only if language? The parties instructed the court that we had no dispute as to whether there was special construction required of these terms, and that the terms could be given their plain, ordinary meaning. That is what the court did. And appellant, excuse me, appellee entirely accepts the district court's interpretation of the only if language. The district court stated, only if makes it clear that the sealing engagement between the container passageway and the pump passageway is a necessary condition. If the two do not create a sealing engagement, the two will not couple. That seems the straightforward, plain, ordinary interpretation of the only if language in this claim. And it is the only interpretation that is consistent with the specification. At three separate places in the specification, column 4, line 30 to 38, column 4, line 45 to 50, and column 4, line 57 to 63, the specification emphasizes that the coupling arrangement between the cap and container must be such that the cap will couple to the container only if the container passageway aligns with the pump passageway and thereby creates the fluid connection. And finally, the prosecution history confirms exactly this. My friend has commented about the Ho reference. The Ho reference is a patent to a bottle that has an integral dip tube mounted inside the bottle. The dip tube ends somewhat below the open mouth of the bottle. The cap has a pipe that descends and lines up with the top of the dip tube. As you screw the cap on, you create that sealed engagement between the two pipes. How about the inside limitation? The opposing counsel says that the tube in your product eventually comes in. So it's on the inner side of the bottle. We have provided, Your Honor, the cross-section photographs. And I think you will find them, first of all, incorporated into Mr. Asselton's declaration at Appendix 215 through 217, and then the full photographs at Appendix 223, 224, and 225. And particularly if you look, for example, at 225, you will see the through holes that Mr. Asselton describes in his declaration. The wall of the container has a hole. The dip tube, the external dip tube, mounts to the outside of the container, sealing around that hole. And it is necessary, of course, that the volume inside the container be able to pass into the interior space of the dip tube. That's the purpose of the dip tube. But there is nothing that suggests that, from the cross-sections or from Mr. Asselton's declaration, that the dip tube is in any way affixed to the inner surface of the container wall. And remember, affixed to is, in fact, the appellant's claim construction. Appellant suggests that the plain ordinary meaning of mounted is affixed to. And we don't dispute that. What we point out is that the container passageway, the dip tube in the Clorox smart tube bottle, is not affixed to the inside wall of the container. I take it that perhaps I should move to the third element then. And this is the extend from. This is the extend from limitation. And before I begin discussing the specifics with respect to the Clorox bottle, let me direct the court's attention to the specification, column one, where the inventor describes the purpose of this invention. Now, in Judge Kogan's opinion, he describes the frustration of not being able to suck up the last few drops of liquid in the bottle and the way in which the Clorox smart tube bottle addresses that. But that is not the problem that this invention of the 743 patent was intended to resolve. As stated at column one, line 21, when the pump is mounted on the container, it must first be placed in an elevated position with the lower end of the pickup tube above the entrance to the container mouth. So we're talking about the old-fashioned spray bottle in which you have a bottle, and then you have the pump mechanism. And dangling from the pump mechanism is this pickup tube. And as the patent notes, directing this pickup tube into the bottle makes assembling the pump with the container a relatively slow process. The purpose of this patent, the innovation described in this patent, is to make the assembly of the cap onto the bottle in a manufacturing plant easier because you no longer have to purposely feed the dip tube into the bottle, and you no longer have to elevate the cap above the bottle. You can bring the cap in at the same elevation as the top of the container. So that is the purpose of the patented technology. And the language that the patent uses to describe that in claim one is that what I've been referring to as the dip tube, what the patent refers to as the container passageway, extends from the open top of the container. Because if it's at the open top, then the cap doesn't need to have a dangling pipe that hangs down. This is exactly the claim construction that the appellant argues, too. The appellant has explained that extending from means stretching forth from a specified area or place. And the claim says that the specified area or place is the open top. Well, it's clear when you look at the bottle that the container passageway of the Clorox bottle doesn't extend from the open top, but here it extends from a point two inches, about 20% of the height of the bottle down from the open top. But what about equivalence? And thank you, Your Honor, for raising that. The doctrine of equivalence has been asserted by appellants with respect to both the mounting limitation and the extend from. And in both instances, they've suggested that there is substantially the same function and substantially the same result. And therefore, the tripartite test has been met. And they've completely overlooked the way. Now, with respect to the mounting limitation, the way is so very different. With the through holes are an important, difficult engineering problem, as Mr. Esselton described in his declaration. It took 65% of the engineering man hours associated with this container to figure out how to use blown molding to create those through holes in the external channel. With respect to the extend from limitation, we have two of the three legs of the tripartite test missing. First of all, the purpose of the limitation is to ensure the result that there is no necessity for raising the cap above some elevated position, above the bottle, before one inserts the, before one attaches the cap to the bottle. And second, that there's no need to purposefully feed the descending dip tube into any particular point. And indeed, in describing the hole reference, the appellant specifically notes that because the hole reference dip tube is somewhat recessed below the mouth of the container, it's now necessary to purposefully align the pickup to the cap pump with the top of the dip tube. So the result of the claimed invention is that you can bring the cap in at a level at the top of the container, put it in place, and you're done. That result is not accomplished with the Clorox product. You, first of all, have to raise the cap sufficiently to clear the two-inch long cap pickup, pump pickup. And second, you have to make sure that the pickup actually mates with the top of the container. So this product fails to meet the result requirement of the tripartite test. Second, because of the manufacturing, you no longer have simply a pipe that ends at the mouth, and then this somehow mates to it. You now have this whole new additional structure that needs to be added. It's a very different way of accomplishing the mating of the cap to the bottle. So we believe that neither of the way nor result steps of the tripartite test have been met with respect to the extending from limitation. Do you want to raise the cross-appeal? Yes, if I may turn to that, that would be wonderful. We would like to address a single point. We understand the abusive discretion standard applies. One way, however, in which a district court abuses its discretion is applying the wrong law. Judge Kogan, in this instance, was deciding a fees motion relatively soon after the Octane decision. The Octane decision said that it was no longer necessary to demonstrate that plaintiff had no objectively reasonable basis for its case in order to be entitled to fees under Section 285. But there hadn't been much law applying that. And unfortunately, when Judge Kogan went back to consider fees motion rather than look to what the Supreme Court suggested, exceptional means unusual, uncommon, rare, he instead looked to the merits of the case, concluded that it was not as simple a case as would justify fees. He said there were colorable arguments concerning the DOE. Yes, Your Honor, exactly. In other words, there was an issue there. There was an issue there that he wanted to address. But that is the basis upon which he ruled on this motion. The question is, is this a rare, unusual, uncommon case? We've now gone back and looked at 300 decisions involving non-infringement summary judgment rulings in the past two years. And this is the only case in which three independent bases for non-infringement were found at summary judgment. Moreover, in most patent cases, it's not clear whether there's infringement or not. There's discovery required of the design, the specifics. When you look at a semiconductor, can you really tell what's going on inside and so forth? Mr. Zimmerman says there were genuine issues of fact on the basic issues on which he's appealed. The district judge obviously felt in neither case was there a genuine issue that precluded summary judgment. I agree. And we feel that Mr. Zimmerman, his client, could have reviewed this product. It's available in the market. I believe he actually has many samples of it. And he could see that there was no mounting to the inner surface wall. He could see that the pipe does not extend from the open top. And he can take the cap off and put it on back to front and realize that the coupling only if limitation is not met. He didn't need anything that discovery would have provided. Furthermore, we brought all these three exact points to Honkap's attention, to Appellant's attention, prior to their filing suit. So A, there were three independent bases. B, those independent bases are patent to any casual observer. And C, the appellant was informed of those before the lawsuit was filed. After the lawsuit was filed, rather than retracting or withdrawing, they continued to pursue litigation that ultimately has proven to be without merit. And that included, for example, retaining Clorox's expert consultant, the person who assisted in the design of this bottle, to serve as their own expert witness, and then refusing to withdraw him when I brought that to the appellant's attention. So there is a combination of both a case that should never have been brought in the first place with a case that was pursued long after it should have been dismissed. Thank you. Any questions? Any more questions? OK. Thank you. And I believe I reserved three minutes. Well, if you have a minute, you can rebuttal on the cross-appeal. A couple things real briefly. My colleague, one of the first things he addressed was the only-if connection. And I believe if we listen to the record, one of the things he talked about after describing the only-if connection, the alignment goes, and thereby connects the fluid connection. That's what I've been trying to say. That's been my point. If you look, Your Honors, at the patent in the abstract, the last three lines of the abstract, it talks about the dispenser permits a fluid arranged within the container to flow through the container passageway. Clearly, the ability for fluid to flow, to be dispersed, is part of the intention of the invention. Background of the invention, same thing. Line 18, 17 to 18, talks about one of the problems containers have is pulling up the liquid product stored within the container when the pump is operating. So clearly, one of the issues contemplated by this invention is being able to disperse liquid. And it makes no sense that the device can be in a fluid connection, excuse me, can be aligned in a non-fluid connection. The fact that the ability to align the passageway of the Clorox bottle in a non-fluid connection is really relevant. Since they can also be aligned in a fluid connection. And it's the connection in a fluid, it's the alignment in a fluid connection that gives rise to the infringement because that's what permits the dispersal of the fluid. As far as the mounted on, I just want to bring to Your Honors' attentions a better picture of what I tried showing you earlier. This is appendix page 223. So you can see how this flange area, and it's discolored, it's a gray area. It's mounted on the interior. As far as axial, and this pertains to the hoe, hoe really has nothing to do with this. If one looks at page 157 of the appendix, one can see that the pump cap and the container are aligned. They are along the same axis. By contrast, if you look at the Clorox device, or if you look at 743 patent at page 61 of the appendix, the pump cap and the container passageway are not in the same axis. They're aligned at different axes. They're non-axial. As far as attorney's fees, if Your Honors permit me, I would just like to read what Judge Kogan said. This is at appendix page 25. Although, quote, although I ultimately ruled against auto caps, the issue was not, quote, so clear cut that it was unreasonable for auto caps to litigate the question until it obtained a ruling on the matter, close quote. And then similarly on page 27, Judge Kogan continues, quote, the crux of Clorox argument is that it prevailed and did so on three grounds, but that is simply insufficient to support an award of attorney's fees. An award of attorney's fees is meant to act as a penalty for failure to win a patent infringement suit. Excuse me, is not meant, sorry, to act as a penalty. In this case, there are clearly disputed views of what these terms mean, and that's what gave rise to this case. Clorox believes that because they disputed our construction terms and our theory of infringement, that we should have agreed to drop the case. If fees are awarded in this case, it would have a chilling effect any time a defendant asserted that they didn't infringe and the plaintiff continued and they lost, they'd be on the hook for fees. I'd also point out with regard to these 300 some odd decisions that my colleague referenced post-Octane that they reviewed, I'm not sure how many of those cases had full blown mark in proceedings prior to the issuance of any summary judgment ruling, and that's a really critical thing here. Finally, as regard to these issues of fees, and my colleague referenced the dueling experts, how we retained their former employee or former someone who consulted for Clorox, but if you look at Mr., if you look at his, if you look at the declarations submitted by Mr. Foster, he makes clear that he did not consult on the SMART II project. And as far as attorney's fees, they're the ones who initially opposed our using his, using him as an expert. We engaged in all this motion practice and then at the end, we had a hearing on April 5th, 2016, and I sent a letter to appendix page 906 that references that. After the hearing, it was clear the court was gonna contemplate allowing auto caps to retain another expert, and that's when they came in and they said, okay, you can consider, you can use Mr. Foster's declaration for purposes of deciding the summary judgment. Your Honor, do you have any additional questions? No questions, Mr. Zimmerman. Anything else? Thank you, Your Honor. Thank you. Okay, you get the, the last word on the cross appeal, one minute. Yes, thank you, Your Honor. In the Octane decision, the Supreme Court said the award of attorney's fees under section 285 is intended to be a deterrent against the initiation of unnecessary patent litigation. Exactly a chilling effect. What the Supreme Court is saying is we want to chill plaintiffs who bring an unmerited patent infringement case on the basis of evidence that's easily available to them. We want those plaintiffs to be deterred from initiating this litigation. Indeed, section 285 is supposed to create a chilling effect, and this is exactly the kind of case that should have been chilled long ago. So, with respect to the Foster declaration, I'd like to point out that Mr. Foster denied consulting on this bottle. We submitted evidence. Mr. Foster submitted a declaration. Judge Kogan weighed that evidence and agreed with the appellee, with the cross-appellant fees motion. And at this point, that part of his determination is not being challenged. So, I think we can leave that issue aside. There are no dueling experts. Appellee did not submit an expert declaration. It's a bit of the declaration of its engineer, Kerry Asselton, who authenticated evidence and explained the design, but offered no expert opinions. Okay, I think we need to wrap it up. We understand the arguments. Thank you, Your Honor. Okay, thank you. Thank you both. The case is taken under submission.